## Supreme Court—Special Term, New York.

April, 1902.

# THE PEOPLE EX REL. LILLIAN-EDWARDS v. THE WARDEN OF THE WORKHOUSE.

### SAME v. LEROY B. CRANE.

# THE PEOPLE EX REL. STELLA ARLINGTON v. THE WARDEN OF THE WORKHOUSE.

### SAME v. LEROY B. CRANE.

(37 Misc. 639.)

1. CODE CRIM. PROC., SEC. 515.

Section 515 of the Code of Criminal Procedure, providing 'that the only mode of reviewing a judgment or order in a criminal action or special proceeding of a criminal proceeding is by appeal, abolishes review by writ and substitutes review by appeal in all criminal matters.

2. HABEAS CORPUS—RETURN CHARTER GREATER NEW YORK, SECTION 710.

A return to a writ of habeas corpus that relator was held in a workhouse under a commitment by a magistrate and accompanied a copy of the commitment, and setting forth all the proceedings, need not show on its face any record, whether such person has been committed after January, 1902, as, if relator claims that she is illegally detained, because entitled to the benefit of section 710 of the Greater New York Charter, she should have traversed the return by alleging a state of facts warranting her discharge under said section.

3. SAME.

It need not affirmatively appear in the commitment that the magistrate acquired jurisdiction under a warrant.

PROCEEDINGS upon writs of certiorari and habeas corpus.

Philip Cohen, for relators.

William Travers Jerome, District Attorney, for respondents.

GREENBAUM, J.: Each of the relators in the above-entitled proceedings is brought into court upon writs of certiorari

VOL. XVI—26

directed to the magistrate, and of *habeas corpus* directed to the warden upon a state of facts alike in both cases.

The return to the *certiorari* in each case shows that the relator was brought before the magistrate upon a sworn complaint of a police officer, charging her with a violation of title 3, section 141, of the Greater New York charter in that she " did knowingly reside in a house of prostitution in a tenement house particularly described, and further charging her with being a vagrant."

The return further shows that the relator was tried upon this charge of vagrancy and that after taking the testimony of the officer, the relator being called upon to answer, and being informed of her rights and of said charge, complaint and testimony, did answer that she was " not guilty," whereupon the magistrate convicted her of being guilty of vagrancy as charged in said complaint, and committed " her to the workhouse for a period of six months, or until she shall thence be delivered by due course of law."

The traverse to the return of the magistrate sets up " that the said return does not show that any warrant for the arrest of the relator herein was ever issued by said Leroy B. Crane as city magistrate."

The traverse was substantially a demurrer to the return.

Section 515 of the Code of Criminal Procedure provides that " writs of error and certiorari, in criminal actions and proceedings and special proceedings of a criminal nature as they have heretofore existed, are abolished and hereafter the only mode of reviewing a judgment or order in a criminal action or special proceeding of a criminal nature, is by appeal."

Counsel for the relators contend that inasmuch as part four of the Criminal Code relates to proceedings in criminal actions prosecuted by indictment and prescribes the procedure in such cases, that section 515, which is one of the sections embraced in Part Four, is only applicable to cases referred to under Part

Four and not to those described in Part Five of the Code, under which the charge of vagrancy is embraced.

The People ex rel. Commissioners of Charities v. Cullen, 151 N. Y. 54, is cited by relators' counsel as authority for his contention.

An examination of the Cullen case shows that it holds precisely the opposite view, and that it is an express authority for the ruling heretofore made in some previous cases of a similar nature that the abolition of writs of *certiorari* is applicable to cases embraced in both Parts Four and Five of the Criminal Code.

Section 515 as originally enacted did refer exclusively to cases cognizable in a court of record as provided for in Part Four, but in 1884, this section was amended so as to apply also to " criminal proceedings and special-proceedings of a criminal nature," which are treated of in Part Five. The Court of Appeals, in the Cullen case, p. 58, holds that, " The effect of this amendment was simply to make the method of review uniform in all cases instead of allowing a review in criminal actions, and by *certiorari* in criminal proceedings and special proceedings of a criminal nature, and to remove some confusion that had arisen from conflicting decisions in the Supreme Court. . . . Section 515 was thus given a general effect by abolishing review by writ and substituting review by appeal in all criminal matters."

The writs of *certiorari* must, therefore, be dismissed.

We will now direct attention to the writs of *habeas corpus* allowed to the relators directed to the warden of the workhouse. The latter makes return to each of the writs that the relator is held in his custody under a commitment issued by Magistrate Crane, a copy of the commitment, forming a part of the return, sets forth all the proceedings had before the magistrate, as hereinbefore summarized.

The traverse to the return avers " that said commitment does not show on its face any record, whether such person has been

committed to the workhouse, penitentiary or county jail after January 1, 1902, and within two years next preceding the date of said commitment for public intoxication, disorderly conduct or vagrancy."

The object of the traverse obviously was to raise the point, that it is necessary affirmatively to show by the return that the relator might be entitled to a discharge before the expiration of the six months for which she was committed, under section 710 of the Greater New York charter.

The section of the charter referred to provides for a discharge of a prisoner under certain circumstances. If the relator claims that she is illegally detained because she is entitled to the benefits of section 710 aforesaid, it would be incumbent upon her to traverse the return by alleging a state of facts warranting her discharge under the provisions of section 710, and, if on a hearing upon the issue thus raised, it was found that she was illegally detained she would be discharged from the custody of the warden.

The further point is raised by the relator that the return does not show that the relator had been arrested under a warrant lawfully issued.

No authority is adduced showing that it must affirmatively appear in the commitment that the magistrate acquired jurisdiction of the relator under a warrant. The commitment sufficiently shows that the relator was brought before the magistrate for examination, and it will be presumed that he duly and regularly acquired jurisdiction over the relator, either by her voluntary appearance, warrant of arrest or arrest by an officer or person in whose presence the alleged misdemeanor occurred.

" If the process is valid on its face, it will be deemed *prima facie* legal, and the prisoner must assume the burden of impeaching its validity by showing a want of jurisdiction.' (People ex rel. Tweed v. Liscomb, 60 N. Y. 571; see, also People ex rel. Danziger v. P. E. House of Mercy, 128 id. 180 People ex rel. McLaughlin v. Wilson, 88 Hun, 261.

Writs dismissed and relators remanded to the custody of the warden.

Writs dismissed and relators remanded.